PEOPLE v BROOKS

1. CRIMINAL LAW—PLEA OF GUILTY—CONSTITUTIONAL LAW—SELF-IN-
CRIMINATION.

A plea of guilty entered after a defendant was asked only if he
had any objection to being sworn to tell the truth knowing that
anything he said might, and probably would, be held against
him, which was the sole mention during the guilty-plea pro-
ceeding or in any prior stage of the record of the question of
self-incrimination, did not inform the defendant of his right to
remain silent and of his right against self-incrimination, requir-
ing the plea to be vacated.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—EQUAL PROTECTION—LEGIS-
LATION—CLASSIFICATION.

Equal protection of the law is not violated where there is a
distinction between the subject matter of two offenses, each
permitting a different sentence, and where the legislation is not
arbitrary or capricious but is based on substantial distinctions
and material differences.

3. FORGERY—STATUTES—UTTERING AND PUBLISHING—CLASSIFICATION
—EQUAL PROTECTION.

The crime of uttering and publishing a forged check, which is a
bill of exchange, is different and distinct from the crime of
uttering and publishing a counterfeit bank bill or note, which
is currency, and the differing sentences do not violate the equal
protection clauses of the State and Federal Constitutions
(MCLA 750.249, 750.253).

4. FORGERY—STATUTES—UTTERING AND PUBLISHING—PROSECUTION—
ELECTION.

A forged instrument cannot be both a bank bill or note, which is
currency, and a check, which is a bill of exchange and not
currency, and therefore the statutes punishing their uttering
and publishing by different sentences do not permit the prose-

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur 2d, Criminal Law §§ 349, 351–353.
[2, 3] 21 Am Jur 2d, Criminal Law §§ 20, 22, 582.
[3, 4] 20 Am Jur 2d, Counterfeiting § 4.

cutor to elect arbitrarily which crime he will charge (MCLA 750.249, 750.253).

Appeal from Washtenaw, William F. Ager, Jr., J. Submitted Division 2 October 5, 1972, at Lansing. (Docket No. 12679.) Decided November 28, 1972.

Joseph C. Brooks was convicted, on his plea of guilty, of uttering and publishing a forged instrument. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Arthur E. Lux,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender Office, by *Michael C. Moran,* for defendant.

Before: QUINN, P. J., and McGREGOR and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. Defendant pled guilty to uttering and publishing contrary to MCLA 750.249; MSA 28.446, was sentenced to 3 to 14 years in prison and appeals as of right.

The facts are simple. Defendant tendered a payroll check for $308.33 to a retailer in Ypsilanti, Michigan in payment for a television set, and received the balance of the amount, some $200, in cash. At the plea defendant advised the trial court that, while he did not endorse the name of the named payee, he knew that the named payee had not endorsed the check and he knew that he was without authority to negotiate the check.

Defendant contends that he was not properly

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

informed of his right against self-incrimination as required by *People v Jaworski,* 387 Mich 21 (1972), and *Boykin v Alabama,* 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969). The trial court herein, before questioning defendant, asked defendant:

"Do you have any objection to being sworn to tell the truth, knowing that anything you say may and probably will be held against you, do you have any objection to this?"

This was the sole mention during the guilty-plea proceeding of the question of self-incrimination. While the trial court did indicate that anything defendant said could and would be used against him, the court did not inform defendant of his right to remain silent as is clearly required by *Jaworski, supra* and *Boykin, supra.* We, therefore, must vacate the guilty plea and remand for a new trial.[1]

While the above discussed failure to inform defendant of his right to remain silent mandates reversal, we find it necessary to discuss an additional question raised by defendant, since the question is likely to arise on retrial. The question, simply stated, is:

Do the different sentences provided for in the offense set forth in MCLA 750.249; MSA 28.446, and set forth in MCLA 750.253; MSA 28.450, violate the equal protection clauses of the State and Federal Constitutions?

It is alleged on the part of the defendant that the equal protection clause guarantees like treat-

---

[1] We would note that we have examined the lower court record to see if defendant was properly advised of his rights at some prior stage which would thereby satisfy the *Jaworski* requirements. See *People v Fredrick Washington,* 43 Mich App 551 (1972). Our examination failed to disclose any on-the-record informing of defendant of his right to remain silent.

ment for all persons within a class; that the classification must be reasonable for achieving the purpose of the legislation; and that it must not be arbitrary. He cites several authorities in support of the above statement. We neither quarrel nor argue with the conclusion or with the cases cited. Defendant, however, has failed to demonstrate that the above cited statutes come within the category.

The relevant statutory sections which require analysis and consideration are as follows:

MCLA 750.248; MSA 28.445:

"(1) Any person who shall falsely make, alter, forge or counterfeit any public record, or any certificate, return or attestation of any clerk of a court, public register, notary public, justice of the peace, township clerk, or any other public officer, in relation to any matter wherein such certificate, return or attestation may be received as legal proof, or any charter, deed, will, testament, bond or writing obligatory, letter of attorney, policy of insurance, bill of lading, bill of exchange, promissory note, or any order, acquittance of discharge for money or other property, or any waiver, release, claim or demand, or any acceptance of a bill of exchange, or indorsement, or assignment of a bill of exchange or promissory note for the payment of money, or any accountable receipt for money, goods or other property, with intent to injure or defraud any person, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 14 years.

"(2) The venue in a prosecution under this section may be either in the county in which the forgery was performed, or in a county in which any false, forged, altered or counterfeit record, deed, instrument or other writing is uttered and published with intent to injure or defraud."

MCLA 750.249; MSA 28.446:

"Uttering and publishing forged instruments—Any

person who shall utter and publish as true, any false, forged, altered or counterfeit record, deed, instrument or other writing mentioned in the preceding section, knowing the same to be false, altered, forged or counterfeit, with intent to injure or defraud as aforesaid, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 14 years."

### MCLA 750.251; MSA 28.448:

"Forgery of bank bills and notes—Any person who shall falsely make, alter, forge, or counterfeit any bank bill or promissory note payable to the bearer thereof, or to the order of any person, issued by this state, or any of its political subdivisions or municipalities or by any incorporated banking company in this state, or in any of the British provinces of North America, or in any other state or country, or payable therein, at the office of any banking company incorporated by any law of the United States or of any other state, with intent to injure or defraud any person, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 7 years."

### MCLA 750.253; MSA 28.450:

"Uttering counterfeit notes, etc.—Any person who shall utter or pass, or tender in payment as true, any such false, altered, forged or counterfeit note, certificate or bill of credit for any debt of this state, or any of its political subdivisions or municipalities, any bank bill or promissory note, payable to the bearer thereof, or to the order of any person, issued as aforesaid, knowing the same to be false, altered, forged or counterfeit, with intent to injure or defraud as aforesaid, shall be guilty of a felony, punishable by imprisonment of not more than 5 years or by fine of not more than 2,500 dollars."

MCLA 750.248, *supra,* and MCLA 750.249, *supra,* deal only with forgery and uttering and publishing of certain designated classes of documents executed by individuals and private companies; however, no mention is made of bills and notes

issued by governmental units and banks. MCLA 750.251, *supra,* and MCLA 750.253, *supra,* on the other hand, specifically refer to the forgery and uttering and publishing of bills and notes issued by governmental units and incorporated banking companies. Whereas the former provides for punishment by imprisonment for not more than 14 years, the latter provides for punishment of not more than 7 years in prison in the case of forgery, and 5 years in prison or a fine of $2,500 in the case of uttering and publishing.

Equal protection of the law requires only that a state, in classifying criminal offenses under its police powers, use a rational basis in formulating such classifications. *Morey v Doud,* 354 US 457; 77 S Ct 1344; 1 L Ed 2d 1485 (1957); *Levy v Louisiana,* 391 US 68; 88 S Ct 1509; 20 L Ed 2d 436 (1968). The classification must be reasonable for achieving the purpose of the legislation, and it must not be arbitrary or capricious, but rather it must be based upon material differences and substantial distinctions. *People v Chapman,* 301 Mich 584, 597 (1942); *Fox v Employment Security Commission,* 379 Mich 579, 588–589 (1967).

The question thus becomes whether a personal or corporate check, which is a bill of exchange within the meaning of MCLA 750.248, *supra,*[2] differs materially and substantially from the bank bill or note referred to in MCLA 750.253, *supra.*[3]

---

[2] A "check" is properly defined as a "bill of exchange", drawn on a bank and payable on demand. *Brown v State,* 157 Tex Cr Rep 65; 246 SW2d 197 (1952); *Kay v Tankel,* 23 Misc 2d 996; 204 NYS2d 366 (1960); *Diemar & Kirk Co v Smart Styles, Inc,* 261 NC 156; 134 SE2d 134 (1964); *Farmers Cooperative Livestock Market, Inc v Second National Bank of London,* 427 SW2d 247 (Ky, 1968); *Leaderbrand v Central State Bank of Wichita,* 202 Kan 450; 450 P2d 1 (1969).

[3] Bank notes and bills are defined in 10 Am Jur 2d, Banks, § 320, p 285:

"Bank notes or bank bills (the terms are used interchangeably) are the promissory notes of a bank to pay the bearer a certain sum on demand."

"Bank bills and notes" denote currency issued under legal restriction, while a "check" is not currency, although it may pass readily from hand to hand. *Dike v Drexel,* 11 App Div 77; 42 NYS 979 (1896); *People v Bedilion,* 206 Cal App 2d 262; 24 Cal Rptr 19 (1962). It is thus readily apparent that the crime of uttering and publishing a bank bill or note pursuant to MCLA 750.253, *supra,* is based upon material differences and substantial distinctions with regard to the subject matter from the crime of uttering and publishing a check pursuant to MCLA 750.249, *supra.*[4]

Since there is a rational distinction between the subject matter of the two offenses, it cannot be said the differing sentences violate the equal protection clauses of the State and Federal Constitutions. Neither can it be said that the statutes allow the prosecutor to arbitrarily elect between the two crimes, since any forged document must fall into one or the other of the two classes, but not both.

Reversed and remanded for a new trial.

QUINN, P. J., concurred.

McGREGOR, J., concurred in the result only.

---

[4] We are not unmindful that the case of *People v Hunn,* 1 Mich App 580 (1965), would seem to indicate that uttering and publishing a check was properly prosecuted under MCLA 750.253, *supra.* This would appear to be clearly a case in which the prosecutor charged defendant with the wrong crime. Since the defendant benefited from that mistake, the distinction herein discussed was not before the *Hunn* Court.